## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

DISTRICT COURT CASE NUMBER:
2:23-cv-01638-MEMF
BANKRUPTCY COURT CASE NUMBER:
2:20-bk-21022-BR
ADVERSARY CASE NUMBER:
2:22-ap-01169-BR
CHAPTER 7

In re Girardi Keese,

*Debtor.*

ELISSA D. MILLER, Chapter 7 Trustee,

*Plaintiff-Appellant,*

v.

JOSEPH D. DINARDO, an individual,

*Defendant-Appellee.*

## DEFENDANT-APPELLEE'S RESPONDING BRIEF

On Appeal from the Order of the United States Bankruptcy Court for the

Central District of California, Los Angeles Division

Hon. Barry Russell, Judge Presiding

Richard M. Scherer, Jr., Esq.
(*pro hac vice)*
Lippes Mathias LLP
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
Telephone: (716) 853-5100
Email: rscherer@lippes.com

Jeff W. Poole, Esq.
Hamrick and Evans LLP
2600 West Olive Avenue, Suite 1020
Burbank, CA 91505
Telephone: 818-763-5292
Email: jpoole@hamricklaw.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION .............................................................................. 1

JURISDICTIONAL STATEMENT ..................................................... 4

STATEMENT OF THE ISSUES ......................................................... 4

STATEMENT OF FACTS .................................................................. 4

RELEVANT PROCEDURAL HISTORY ............................................ 6

ARGUMENT...................................................................................... 9

I.     LEGAL STANDARD ............................................................... 9

II.    THE BANKRUPTCY COURT HAD JURISDICTION TO RENDER THE
       ORDER .....................................................................................10

III.   THE TRUSTEE DID NOT PRESERVE ANY ARGUMENTS FOR
       APPEAL AGAINST DINARDO............................................13

IV.    THE BANKRUPTCY COURT'S DISMISSAL OF THE COMPLAINT
       WAS PROPER BECAUSE THE TRUSTEE DID NOT ALLEGE THAT
       DINARDO HAS ANY INDIVIDUAL LIABILITY ...............................20

       i.     The Trustee admitted that her theory of liability against DiNardo did
              not stem from any individual liability .................................20

       ii.    The Trustee did not plead any facts sufficient to support an alter ego
              theory ...................................................................................244

       iii.   All claims against DiNardo fail because all of the Trustee's claims
              against CAL II were properly dismissed on the basis of res judicata .277

       iv.    All claims against DiNardo fail because all of the Trustee's claims
              against CFS were properly dismissed................................300

V.     TRUSTEE DID NOT MEET THE PLEADING STANDARDS OF FED.
       R. CIV. P. 8 AND 9..................................................................31

       i.     The Trustee's allegations Against DiNardo fail to satisfy Fed. R. Civ. P.
              8(a)........................................................................................31

       ii.    The Trustee's allegations against DiNardo fail to satisfy Fed. R. Civ. P.
              9(b)........................................................................................355

VI.   THE TRUSTEE'S THIRD CAUSE OF ACTION FOR DECLARATORY RELIEF- FEE SHARING WAS PROPERLY DISMISSED ..................... 37

    *i.*    *The Trustee is not entitled to a turnover proceeding* ........................... 37

    *ii.*    *The Trustee is not entitled to an accounting* ........................................ 39

VII.   THE TRUSTEE'S FIFTH CAUSE OF ACTION FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY WAS PROPERLY DISMISSED ............................................................................................. 42

VIII.   THE TRUSTEE'S ARGUMENTS FAIL TO SUPPORT REVERSAL OF THE BANKRUPTCY COURT'S DECISION ....................................... 466

IX.   THE BANKRUPTCY COURT DID NOT ERR WHEN IT DENIED TRUSTEE'S REQUEST TO AMEND THE COMPLAINT ................... 49

CONCLUSION ............................................................................................ 522

# TABLE OF AUTHORITIES

**Cases**

*Am. Master Lease LLC v. Idanta Partners, Ltd.,*
    225 Cal. App. 4th 1451 (2014).......................................................................43

*Appalachian Enters., Inc. v. ePayment Solutions, Ltd.,*
    2004 WL 2813121 (S.D.N.Y. Dec. 8, 2004) ..................................................32

*Ascon Properties, Inc. v. Mobil Oil Co.,*
    866 F.2d 1149 (9th Cir. 1989).......................................................................52

*Atuahene v. City of Hartford,*
    10 F. App'x at 34 (2d Cir. 2001))..................................................................32

*B&L Prods., Inc. v. Newsom,*
    2022 WL 3567064 (S.D. Cal. Aug. 18, 2022) .............................. 14, 37, 39, 42

*Belton v. Olympia Police Dep't,*
    2021 WL 1312981 (W.D. Wash. Apr. 8, 2021)..............................................47

*Boeing Co. v. Cascade Corp.,*
    207 F.3d 1177 (9th Cir. 2000).......................................................................21

*Casey v. U.S. Bank Nat. Assn.,*
    127 Cal. App. 4th 1138, Cal. Rptr. 3d 401 (2005).........................................45

*Celanese Corp. v. Martin K. Eby Const. Co.,*
    620 F.3d 529 (5th Cir. 2010).........................................................................15

*Daewoo Motor Am., Inc. v. Gulf Ins. Co.,*
    302 B.R. 308 (C.D. Cal. 2003).......................................................................38

*Deerpoint Grp., Inc. v. Acqua Concepts, Inc.,*
    2014 WL 7178210 (E.D. Cal. Dec. 16, 2014) ...............................................31

*Destfino v. Reiswig,*
   630 F.3d 952 (9th Cir. 2011)........................................................................31

*Dharan Kumar v. Ally Fin. Inc et al. Additional Party Names: Alfa Romeo of
   Puente Hills, Maserati,*
   2022 WL 16962283 (C.D. Cal. Oct. 17, 2022)..............................................14

*Diamond v. Friedman,*
   466 B.R. 1 (Bankr. C.D. Cal. 2012) ..............................................................38

*Ditto v. McCurdy,*
   510 F.3d 1070 (9th Cir. 2007)........................................................................49

*EED Holdings v. Palmer Johnson Acquisition Corp.,*
   228 F.R.D. 508 (S.D.N.Y. 2005)....................................................................25

*Engineer.AI Corp. v. Kaufman,*
   2022 WL 17886022 (C.D. Cal. Dec. 2, 2022) ...............................................22

*Ewing v. Encor Solar, LLC,*
   2019 WL 277386 (S.D. Cal. Jan. 22, 2019)....................................................31

*Foley v. Wells Fargo Bank, N.A.,*
   772 F.3d 63 (1st Cir. 2014) ............................................................................34

*Geisler v. Petrocelli,*
   616 F.2d 636 (2d Cir. 1980)...........................................................................31

*George v. eBay, Inc.,*
   71 Cal. App. 5th 620(2021)......................................................................42, 46

*Hammett v. Sherman,*
   2020 WL 1332591 (S.D. Cal. Mar. 23, 2020) ...............................................44

*Harris v. Wittman (In re Harris),*
   590 F.3d 730 (9th Cir.2009)...........................................................................10

*Hennessey v. ICE Floe, LLC,*
    2021 WL 322685 (W.D. Wash. Feb. 1, 2021) ................................................21

*In re AWRT Liquidation Inc.,*
    547 B.R. 831 (Bankr. C.D. Cal. 2016) ........................................................11

*In re Boyd,*
    243 B.R. 756 (N.D. Cal. 2000) ...................................................................... 9

*In re Censo, LLC,*
    638 B.R. 416 (B.A.P. 9th Cir. 2022) ............................................................50

*In re Empire Land, LLC v. Empire Partners, Inc.,*
    2016 WL 5890062 (C.D. Cal. Oct. 7, 2016) .................................................11

*In re Google Assistant Priv. Litig.,*
    457 F. Supp. 3d 797 (N.D. Cal. 2020) .........................................................14

*In re JMC Telecom LLC,*
    416 B.R. 738 (C.D. Cal. 2009) ...................................................................... 9

*In re Jud. Misconduct,*
    632 F.3d 1287 (9th Cir. 2011) .....................................................................34

*In re Mann,*
    907 F.2d 923 (9th Cir. 1990) ...............................................................11, 12

*In re Perry,*
    662 F. App'x 532 (9th Cir. 2016) ................................................................49

*In re Ray,*
    624 F.3d 1124 (9th Cir. 2010) .....................................................................10

*In re Tracht Gut, LLC,*
    503 B.R. 804 (B.A.P. 9th Cir. 2014) ............................................................10

*In re Urcarco Securities Litigation*,
  148 F.R.D. 561 (N.D.Tex.1993)......................................................................32

*In re World Solar Corp.*,
  81 B.R. 603 (Bankr. S.D. Cal. 1988).............................................................10

*John Hancock Mut. Life Ins. Co. v. Watson*,
  917 F.2d 1162 (9th Cir. 1990)...................................................................37, 40

*Kensington Apartment Props., LLC v. Loanvest IX, L.P.*,
  2019 WL 3933713 (N.D. Cal. Aug. 19, 2019).............................................40

*Klepac v. CTX Mortg. Co., LLC*,
  2012 WL 662456 (E.D. Cal. Feb. 28, 2012)................................................47

*Kramer v. Allmon,*
  2016 WL 4427045 (N.D. Cal. Aug. 22, 2016)..................................23, 33, 47

*Lunn v. City of Los Angeles*,
  2022 WL 4357436 (C.D. Cal. Sept. 20, 2022).............................................14

*Mandawala v. Struga Mgmt.*,
  2023 WL 2712500 (5th Cir. Mar. 30, 2023).................................................15

*Matter of Baldwin–United,*
  48 B.R. 49 (Bankr.S.D.Ohio 1985) ..............................................................10

*MCI Telecomms. Corp. v. Gurga*,
  176 B.R. 196 (B.A.P. 9th Cir. 1994) .............................................................38

*Montgomery v. Specialized Loan Servicing, LLC*,
  772 F. App'x 476 (9th Cir. 2019).................................................................14

*N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*,
  458 U.S. 50 (1982)........................................................................................10

*Namer v. Bank of Am., N.A.*,
  2017 WL 1180193 (S.D. Cal. Mar. 30, 2017) ..................................................44

*Neilson v. Union Bank of Cal., N.A.*,
  2003 WL 27374137 (C.D. Cal. Feb. 20, 2003).................................................45

*Owens v. Kaiser Found. Health Plan, Inc.*,
  244 F.3d 708 (9th Cir. 2001)...........................................................................28

*Pond v. Doe*,
  2021 WL 2138446 (W.D. Wash. May 26, 2021)...............................................47

*Port Chester Elec. Const. Co. v. Atlas*,
  40 N.Y.2d 652 (1976) ......................................................................................25

*Ramos v. JPMorgan Chase & Co.*,
  690 F. App'x 533 (9th Cir. 2017).....................................................................15

*Robbins v. Oklahoma*,
  519 F.3d 1242 (10th Cir. 2008)........................................................................32

*S.E.C. v. Hickey*,
  322 F.3d 1123 (9th Cir.)...................................................................................24

*Sass v. Cohen*,
  10 Cal. 5th 861 (2020) .....................................................................................40

*Screen Cap. Int'l Corp. v. Libr. Asset Acquisition Co.*,
  510 B.R. 248 (C.D. Cal. 2014).......................................................................... 9

*Seymour v. Summa Vista Cinema, Inc.*,
  809 F.2d 1385 (9th Cir.)...................................................................................20

*Shantou Real Lingerie Mfg. Co.*,
  401 F. Supp. 3d at 439–40 (S.D.N.Y. 2018)....................................................25

*Siegal v. Gamble*,
2015 WL 4734741 (N.D. Cal. Aug. 10, 2015)...............................................46

*Siegel v. Fed. Home Loan Mortg. Corp.*,
143 F.3d 525 (9th Cir. 1998).....................................................................27, 29

*Silva v. U.S. Bancorp*,
2011 WL 7096576 (C.D. Cal. Oct. 6, 2011)...............................14, 37, 39, 42

*Stewart v. U.S. Bancorp*,
297 F.3d 953 (9th Cir. 2002).........................................................................27

*Swiekiewicz v. Sorema N.A.*,
534 U.S. 506 (2002).......................................................................................31

*TopDevz, LLC v. LinkedIn Corp.*,
2021 WL 3373914 (N.D. Cal. Aug. 3, 2021)................................................41

*Tracht Gut, LLC v. L.A. Cnty. Treasurer & Tax Collector (In re Tracht Gut, LLC)*,
503 B.R. 804 (9th Cir. BAP 2014)................................................................50

*Tull v. Higgins*,
2021 WL 6116971 (N.D. Cal. Dec. 27, 2021)..................................23, 34, 47

*U.S. ex rel. Mateski v. Mateski*,
634 F. App'x 192 (9th Cir. 2015)............................................................12, 15

*United Alloys, Inc. v. Baker*,
797 F. Supp. 2d 974 (C.D. Cal. 2011)..........................................................21

*United States v. Webb*,
655 F.2d 977 (9th Cir. 1981)..........................................................................49

*Vallejo v. Santini-Padilla*,
607 F.3d 1 (1st Cir. 2010).............................................................................15

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ......................................................................36

*Walsh v. Nevada Dep't of Hum. Res.*,
   471 F.3d 1033 (9th Cir. 2006) ................................................................14, 15

*Wescott v. Block*,
   2022 WL 1136728 (N.D. Cal. Apr. 18, 2022) ...............................................42

*Yellowcake, Inc. v. Dashgo, Inc., et al.*,
   2022 WL 172934 (E.D. Cal. Jan. 19, 2022) ...................................................41


## Statutes

11 U.S.C. § 542(a) .........................................................................37, 38, 39
28 U.S.C. § 157(b)(1) ..........................................................................10
28 U.S.C. § 157(c)(2) ..........................................................................10
28 U.S.C. § 157(b)(2)(A) ...........................................................6, 12, 13
28 U.S.C. § 157(b)(2)(H) ...........................................................6, 12, 13
28 U.S.C. § 157(b)(2)(K) ...........................................................6, 12, 13
28 U.S.C. § 157(b)(2)(O) ...........................................................6, 12, 13


## Rules

5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1281, (1969) ...........32
Fed. R. Civ. P. 8.................................................................................passim
Fed. R. Civ. P. 9.............................................................................33, 35, 37, 43
Fed. R. Civ. P. 12(b)(6).........................................................................9

## INTRODUCTION

The present appeal arises out of the Bankruptcy Court's dismissal, with prejudice, of the thirteen-count Complaint filed by Elissa D. Miller, in her capacity as the Chapter 7 trustee (the "Trustee") of the debtor Girardi Keese ("Girardi Keese" or the "Debtor"), against Counsel Financial Services, LLC ("CFS"), California Attorney Lending II, Inc. ("CAL II") and Appellee Joseph D. DiNardo ("DiNardo"). (1 ER 2-3). The Trustee reached a settlement with CAL II and CFS prior to the briefing of the present appeal and thus, the Trustee's appeal relates to DiNardo only. (Dkt. 16, p. 2; Bankr. Dkt. 1737).

While the Trustee's Complaint originally brought twelve causes of action against DiNaro, the Trustee only appeals the decision of the Bankruptcy Court dismissing her Third Cause of Action for "Declaratory Relief – Fee Sharing" and her Fifth Cause of Action for "Aiding and Abetting Breach of Fiduciary Duty." [1] The Bankruptcy Court's dismissal of the remaining causes of action against DiNardo, CAL II and CFS are not raised on appeal and are, thus, not addressed herein.

As a threshold matter, the Trustee failed to preserve any arguments relating to the Bankruptcy Court's dismissal of the Complaint against DiNardo. CAL II, CFS

---

[1] Trustee at times refers to her claim for Aiding and Abetting Breach of Fiduciary claim as her "Sixth" Cause of Action; however, it appears as the Fifth Cause of Action. The Trustee at times refers to her claim for Declaratory Judgment—Fee sharing as her Fourth Cause of Action; however, it appears as the Third Cause of Action.

1

and DiNardo all submitted motions to dismiss, while the Trustee submitted a single consolidated opposition ("Consolidated Opposition") in response. The Consolidated Opposition, however, ignored all the arguments contained in DiNardo's motion to dismiss ("Motion")—a point that the Trustee conceded at oral argument. (1 ER 57). An appeal, however, is not an opportunity to raise arguments that were not briefed for the lower court. The Trustee's failure to address DiNardo's arguments raised in his Motion warranted the dismissal of all claims against DiNardo in the Bankruptcy Court and bars the Trustee from relitigating the Motion on appeal.

Additionally, this appeal is the Trustee's attempt to pursue double recovery. Having already found resolution with the corporate defendants, the Trustee cannot pursue relief against DiNardo where his alleged conduct is not independent of the claims that the Trustee already resolved as to CAL II and CFS. There are two settlements relevant to the present appeal. First, on June 9, 2021, the Bankruptcy Court approved the settlement between the Trustee and CAL II with respect to the loan CAL II extended to Girardi Keese ("First Agreement"), which is now a final order and not subject to appeal. (Bankr. Dkt. 384). In resolving the underlying motions to dismiss, the Bankruptcy Court properly determined that the First Agreement barred all claims pursuant to *res judicata*. (1 ER 97). Second, after the Bankruptcy Court dismissed the Complaint with prejudice, the Trustee entered into a settlement agreement with CAL II and CFS, which released all of the Trustee's

2

claims against them and their agents ("Second Agreement"). (Dkt. 16, p. 2; Bankr. Dkt. 1673). As all claims against DiNardo are, by the Trustee's own admission, grounded exclusively on a theory of alter ego or agency, the Second Agreement unequivocally extinguished any claims against DiNardo—for the second time.

Even ignoring the procedural prohibitions requiring the dismissal of the Trustee's appeal, the decision of the Bankruptcy Court must be affirmed. As explained in greater detail below:

- The Bankruptcy Court had jurisdiction to render its decision to dismiss the Complaint with prejudice;

- The Bankruptcy Court rightly determined that the Complaint is bereft of any specific allegations of wrongdoing on the part of DiNardo in his individual capacity, or pursuant to any theory of vicarious liability;

- The Complaint failed to comply with pleading standards of Fed. R. Civ. P. 8 and 9;

- The Bankruptcy Court properly determined that the Trustee did not, and could not, allege any elements for any claim made against DiNardo—including the Trustee's Third and Fifth Causes of Action at issue in this appeal; and

- The Bankruptcy Court did not err when it concluded that amendment would be futile.

Plainly stated, the Trustee presents no material argument to dispute that DiNardo was rightfully released from the adversary proceeding permanently because the Complaint did not, and could not, state any claim against him. As such, the Bankruptcy Court's decision must be affirmed.

## JURISDICTIONAL STATEMENT

DiNardo maintains that the Bankruptcy Court had jurisdiction to render its decision to dismiss the Complaint with prejudice. Not only were the issues before the Bankruptcy Court "core" issues, but all parties consented to its jurisdiction.

## STATEMENT OF THE ISSUES

1.      Did the Bankruptcy Court have jurisdiction to dismiss the Complaint with prejudice?

Answer: Yes.

2.      Did the Trustee preserve any arguments for appeal of the Bankruptcy Court's Order, granting DiNardo's Motion with prejudice?

Answer: No.

3.      Did the Bankruptcy Court properly dismiss the Complaint with prejudice?

Answer: Yes.

## STATEMENT OF FACTS

On August 31, 2022, the Trustee filed a thirteen-count adversary proceeding in the United States Bankruptcy Court, Central District of California against CAL II, CFS and DiNardo. (3 ER 434 – 518). Only the Third (Declaratory Relief – Fee Sharing) and Fifth (Aiding and Abetting Breach of Fiduciary Duty) Causes of Action are subject to the Trustee's present appeal.

The underlying factual basis for the Complaint arises out of the conduct of attorney Thomas V. Girardi ("Girardi") and his law firm Girardi Keese. As a result of the actions of Girardi, which led to the financial collapse of Girardi Keese, the Trustee asserts that she is entitled to recover funds from DiNardo. Specifically, the Trustee alleges that CAL II and CFS are lenders that provide litigation funding to law firms like Girardi Keese. (3 ER 438, ¶7; 3 ER 443, ¶24). The Trustee asserts that DiNardo, an attorney, is the owner and founder of CAL II and CFS (3 ER 443, ¶23), is a senior officer at CAL II, and maintains the role of "Plaintiff Support" at CFS. *Id.* [2]

Throughout the Complaint, the Trustee collectively refers to CAL II, CFS and DiNardo as the "CFS Defendants." Despite aggregating CAL II, CFS and DiNardo, the Complaint only asserts that CAL II extended loans to Girardi Keese. (3 ER 439, ¶9). The Complaint sets forth that each of the CFS Defendants are agents, co-conspirators, and participants in joint ventures. (3 ER 443 – 444, ¶25).

The Trustee alleges that upon the default or likely default of Girardi Keese to its lenders (including CAL II), DiNardo, CAL II and CFS became "involved in addressing Girardi Keese' financial situation." (3 ER 454, ¶58). DiNardo, CAL II

---

[2] The Complaint incorrectly concludes that DiNardo is an owner and founder of CAL II, which DiNardo expressly denies. As DiNardo is required to treat all allegations as true for the purposes of the Motion, DiNardo maintains that Trustee's claims against him as an individual fail as a matter of law.

and CFS became involved in order to "ensure funds flowed to the CFS Defendants."
*Id.* "[A]t all times, DiNardo's goal was to keep Girardi Keese operating so as to
protect CAL II's interests in Girardi Keese's collateral." (3 ER 455, ¶66).

The Trustee alleges, upon information and belief, that the CFS Defendants
referred cases to Girardi Keese with the expectation that they would receive
repayment of CAL II's loan. (3 ER 438, ¶7; 3 ER 455, ¶66; 3 ER 460, ¶87). "The
CFS Defendants and Girardi Keese were to share in the fees recovered in cases on a
50-50 basis as the sole source of repayment [of CAL II's loan]. (3 ER 460, ¶87, ii.).

In essence the Trustee claims that DiNardo, by virtue of his alleged role with
CAL II and CFS, was aware of Girardi's' conduct, such that he somehow became
personally responsible for same. The Bankruptcy Court correctly rejected this theory
and dismissed all claims against DiNardo.

## RELEVANT PROCEDURAL HISTORY

On August 31, 2022, the Trustee filed the subject adversary action. (3 ER
433). In the Complaint, the Trustee asserted that the Bankruptcy Court had
jurisdiction over the proceeding because it was a "core proceeding under 28 U.S.C.
§ 157(b)(2)(A)(K)(H) and (O)." (3 ER 441–442, ¶17). The Trustee stated she
"consents to the entry of a final judgment in this matter by the Bankruptcy Court."
(3 ER 441, ¶16).

On November 4, 2022, CAL II and CFS filed their motion to dismiss. (2 ER 332–430) and DiNardo filed his own Motion (2 ER 230 – 277), which incorporated certain arguments set forth in CAL II and CFS's motion to dismiss and more importantly, presented unique arguments that were specific to the Trustee's claims against DiNardo.

On December 6, 2022, the Trustee filed a Consolidated Opposition to the motions to dismiss. (1 ER 0186 – 221) and Request for Judicial Notice of the Settlement Agreement. (Adversary Dkt. 47). The Consolidated Opposition *did not* address any of the arguments DiNardo advanced in his Motion. (1 ER 0186–221).

On January 10, 2023, CAL II and CFS filed their reply to the Consolidated Opposition (1 ER 117–162) and DiNardo filed his reply to the Consolidated Opposition. (1 ER 165–185).

On February 7, 2023, the parties appeared for a continued hearing regarding the pending motions to dismiss. (1 ER 16–103). At the hearing, the Bankruptcy Court advised that the Consolidated Opposition "ignored" DiNardo, and the Trustee conceded that it did not respond to all the arguments raised. (1 ER 57). The Bankruptcy Court concluded that the Trustee failed to allege that DiNardo had any personal liability for the conduct of CAL II or CFS. (1 ER 29). The Trustee admitted that all claims against DiNardo were made pursuant to a theory of alter ego or agency. (1 ER 69). The Bankruptcy Court concluded that all the claims at issue fell

7

under the umbrella of CAL II's debtor / creditor relationship because neither CFS nor DiNardo were lenders or partners with Girardi Keese. (1 ER 21; 1 ER 49). The Bankruptcy Court noted that the conduct of CAL II, CFS and DiNardo was not improper and represented business professionals trying to protect their own interests in the face of Girardi Keese's financial situation. (1 ER 98). The Bankruptcy Court provided a detailed explanation for its decision to grant CAL II, CFS and DiNardo's respective motions to dismiss and its decision to deny an opportunity to amend the Complaint. (1 ER 97–100).

On February 7, 2023, as instructed by the Bankruptcy Court, CAL II, CFS and DiNardo lodged a proposed order, granting their respective motions to dismiss. The Trustee filed an objection to the Bankruptcy Court's jurisdiction, arguing that CAL II, CFS and DiNardo had not consented to the Bankruptcy Court's jurisdiction. (1 ER 104–106). On February 9, 2023, Defendants CFS, CAL II (1 ER 11–13) and DiNardo (1 ER 9–10) formally entered their consent to the Bankruptcy Court's jurisdiction and advised that they agreed with the Trustee's original assessment that the proceedings were "core proceedings," meaning that consent was not required. On February 16, 2023, the Court filed and entered its Order dismissing the Complaint with prejudice. (1 ER 2–3; 4 SER 775-776[3]).

---

[3] DiNardo's Supplemental Appendix of Exhibits ("SER")

On February 23, 2023, the Trustee filed Notices of Appeal. (3 ER 519). On April 10, 2023, DiNardo filed for voluntary Chapter 11 bankruptcy, in the United State Bankruptcy Court, Western District of New York and on April 18, 2023, DiNardo filed his Notice of Filing Bankruptcy, triggering an automatic stay of the appeal. (Dkt. 12).

On April 18, 2023, the Trustee entered into a settlement agreement with CAL II and CFS, which was approved on April 28, 2023. (Bankr. Dkt. 1737). As a result, the Trustee filed a request to dismiss her appeal as it relates to CAL II and CFS. (Dkt. 19).

On August 6, 2023, the Trustee filed a motion for relief from the automatic stay triggered by DiNardo's Bankruptcy filing, which was granted on September 18, 2023. (W.N.D.Y. Bankr. Dkt. 59; W.N.D.Y. Bankr. Dkt. 77).

## ARGUMENT

## I.    LEGAL STANDARD

A District Court reviews "the Bankruptcy Court's factual findings for clear error and its legal conclusions *de novo.*" *In re JMC Telecom LLC,* 416 B.R. 738, 741 (C.D. Cal. 2009); *see also Screen Cap. Int'l Corp. v. Libr. Asset Acquisition Co.,* 510 B.R. 248, 254 (C.D. Cal. 2014). Generally speaking, where a Bankruptcy Court's dismissal of a complaint is made pursuant to 12(b)(6), the Bankruptcy's

findings are made as a matter of law, and as such will be reviewed de novo. *See In re Boyd,* 243 B.R. 756, 759 (N.D. Cal. 2000).

Additionally, "[a] dismissal without leave to amend and with prejudice is reviewed for abuse of discretion." *In re Tracht Gut, LLC,* 503 B.R. 804, 810 (B.A.P. 9th Cir. 2014), *aff'd,* 836 F.3d 1146 (9th Cir. 2016).

## II.   THE BANKRUPTCY COURT HAD JURISDICTION TO RENDER THE ORDER

It is well settled that "bankruptcy courts have jurisdiction to hear a broad array of issues." *In re Ray,* 624 F.3d 1124, 1130 (9th Cir. 2010). "The exercise of their jurisdiction to enter any final order or judgment is limited to (1) cases under title 11, § 157(b)(1); (2) core bankruptcy proceedings that either arise under the Bankruptcy Code or arise in a case under the Code, *id.*; or (3) cases in which all interested parties consent to the bankruptcy court having jurisdiction to enter a final order in a matter that is related to a case under the Bankruptcy Code, § 157(c)(2). *Id. citing N. Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50 (1982); *Harris v. Wittman (In re Harris),* 590 F.3d 730, 737 & n. 3 (9th Cir.2009).

Consent for non "core proceedings" need not be express but can be implied through the parties' conduct. *See generally, In re World Solar Corp.,* 81 B.R. 603, 605–06 (Bankr. S.D. Cal. 1988); *Matter of Baldwin–United,* 48 B.R. 49 (Bankr.S.D.Ohio 1985). "[C]onsent under § 157(c)(2) may be express; it may be implied from [failure to make a timely] objection to the bankruptcy court's

jurisdiction; or it may be implied from any act which indicates a willingness to have the bankruptcy court determine a claim or interest." *In re World Solar Corp.,* 81 B.R. at 605–06. As noted in *In re AWRT Liquidation Inc., 5*47 B.R. 831, 840 (Bankr. C.D. Cal. 2016), "[p]arties do, however "sometimes change such positions to avoid the expense, delay, and inconvenience of *de novo* proceedings [before a district court], or for any other reasons." *In re AWRT Liquidation Inc.,* 547 B.R. 831, 840 (Bankr. C.D. Cal. 2016); *see also In re Empire Land, LLC v. Empire Partners, Inc.,* 2016 WL 5890062, at *2 (C.D. Cal. Oct. 7, 2016).

A party commencing the adversary proceeding may not later change their position, simply as a way to avoid the entry of judgment. For example, in *In re Mann,* 907 F.2d 923, 926 (9th Cir. 1990), the Ninth Circuit concluded that a party filing an adversary proceeding, that fails to object to the jurisdiction of the Bankruptcy Court until the entry of judgment against him, was insufficient to counteract the presumption of consent.

Contrary to the Trustee's position, all parties agreed that the proceedings are "core proceedings" and they all consented to the Bankruptcy Court's jurisdiction for entry of final judgment on non "core" matters. The Complaint explicitly stated that the Bankruptcy Court had jurisdiction because the proceeding is a "core proceeding." (3 ER 441, ¶17). The Trustee also explicitly asserted that she consented to the Bankruptcy Court's entry of a final judgement in the adversary proceeding—

11

meaning that the Bankruptcy Court had the Trustee's consent to enter final judgement for any non "core" proceedings. (3 ER 441, ¶16). At no point prior to the contemplated entry of judgement dismissing the Complaint, did the Trustee contest that the proceedings involved "core" matters or enter an objection to the Bankruptcy Court's jurisdiction. The Trustee also never raised this argument in response to CAL II, CFS or DiNardo's motions to dismiss—waiving this argument on appeal. *See generally U.S. ex rel. Mateski v. Mateski*, 634 F. App'x 192, 195 (9th Cir. 2015) (arguments not raised before the lower court would not be considered on appeal). Thus, even if the matters were not "core proceedings," which DiNardo maintains they are, the Trustee's consent to the jurisdiction of the Bankruptcy Court was both explicit and implied.

While the Defendants initially objected to the jurisdiction of the Bankruptcy Court for non "core proceedings," on February 9, 2023, Defendants CFS, CAL II and DiNardo formally entered their consent to the Bankruptcy Court's jurisdiction. (1 ER 11–13). In entering their consent to the Bankruptcy Court's jurisdiction, Defendants CFS, CAL II and DiNardo also noted that they agreed with the Trustee's initial assessment that the proceeding was a "core proceeding, pursuant to 28 U.S.C. §§ 157(b)(2)(A), (H), (K), (O)." *Id.*

The Trustee's position that the Bankruptcy Court lacked jurisdiction due to lack of consent is a clear attempt to avoid the consequences of the Bankruptcy

12

Court's order dismissing the Complaint with prejudice. This late-stage reversal is not permissible. *See generally, In re Mann,* 907 F.2d at 926. Moreover, as pointed out by the Trustee herself, the proceeding is a "core proceeding," which does not require the consent of all parties. *See also* 28 U.S.C. §§ 157(b)(2)(A) ("matters concerning the administration of the estate"); (H) ("proceedings to determine, avoid, or recover fraudulent conveyances"); (K) ("determinations of the validity, extent, or priority of liens"); (O) ("other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims"). Thus, the Bankruptcy Court was empowered to enter a final judgment regarding the Complaint, regardless of the parties' consent.

The Bankruptcy Court had jurisdiction to oversee "core proceeding," and it also had the consent of all parties to render a final decision on non "core" matters. The Bankruptcy's decision to dismiss the Complaint with prejudice was well within its jurisdiction.

## III.   THE TRUSTEE DID NOT PRESERVE ANY ARGUMENTS FOR APPEAL AGAINST DINARDO

In her Consolidated Opposition, the Trustee failed to respond to DiNardo's arguments contained in his Motion. The Trustee's failure to respond to DiNardo's arguments is fatal to her present appeal as she did not preserve any arguments with

respect to DiNardo. Accordingly, the Trustee's appeal must be dismissed in its entirety.

Failure to address arguments raised in a motion to dismiss is tantamount to abandonment of that claim. *See Montgomery v. Specialized Loan Servicing, LLC,* 772 F. App'x 476, 477 (9th Cir. 2019) ("The district court properly dismissed plaintiffs' remaining claims because plaintiffs failed to respond to the arguments raised in defendants' motion to dismiss these claims."). "Where a party fails to address arguments against a claim raised in a motion to dismiss, the claims are abandoned and dismissal is appropriate." *B&L Prods., Inc. v. Newsom,* 2022 WL 3567064, at *6 (S.D. Cal. Aug. 18, 2022), *see also Dharan Kumar v. Ally Fin. Inc et al. Additional Party Names: Alfa Romeo of Puente Hills, Maserati,* 2022 WL 16962283, at *6 (C.D. Cal. Oct. 17, 2022) ("Plaintiff's opposition to the motion to dismiss fails to address any of the arguments raised by Defendant's initial motion. This alone is reason enough to dismiss this claim"); *Silva v. U.S. Bancorp,* 2011 WL 7096576, at *3 (C.D. Cal. Oct. 6, 2011) ("[T]he Court finds that Plaintiff concedes his ... claim should be dismissed by failing to address Defendants' arguments in his Opposition."); *Lunn v. City of Los Angeles,* 2022 WL 4357436, at *4 (C.D. Cal. Sept. 20, 2022); *In re Google Assistant Priv. Litig.,* 457 F. Supp. 3d 797, 843 (N.D. Cal. 2020) ("Plaintiffs' brief in Opposition makes no attempt to explain or defend their

omissions, wherefore the Court considers the claim abandoned."); *Walsh v. Nevada Dep't of Hum. Res.,* 471 F.3d 1033, 1037 (9th Cir. 2006).

Moreover, it is well established in the Ninth Circuit that the failure to respond to arguments advanced in a motion to dismiss bars the party from asserting those arguments on appeal. *See Ramos v. JPMorgan Chase & Co.*, 690 F. App'x 533, 535 (9th Cir. 2017) ("because Appellants did not raise any robosigning allegations in their opposition to the motion to dismiss, they have 'effectively abandoned [their] claim, and cannot raise it on appeal.'"); *U.S. ex rel. Mateski v. Mateski*, 634 F. App'x 192, 195 (9th Cir. 2015) ("Mateski failed to preserve his equal protection and substantive due process claims because he did not raise them in the district court, and we decline to reach them."); *Walsh v. Nevada Dep't of Hum. Res.,* 471 F.3d 1033, 1037 (9th Cir. 2006) ("A plaintiff who makes a claim for injunctive relief in his complaint, but fails to raise the issue in response to a defendant's motion to dismiss on the grounds of immunity from money damages, has effectively abandoned his claim, and cannot raise it on appeal."). Other Courts have come to the same conclusion. *See Mandawala v. Struga Mgmt.,* 2023 WL 2712500, at *2 (5th Cir. Mar. 30, 2023) *citing Celanese Corp. v. Martin K. Eby Const. Co.,* 620 F.3d 529, 531 (5th Cir. 2010) ("The general rule of this court is that arguments not raised before the district court are [forfeited] and will not be considered on appeal."); *Vallejo v. Santini-Padilla,* 607 F.3d 1, 7 (1st Cir. 2010).

DiNardo filed his own Motion and raised arguments specific to the allegations made against him. (2 ER 230– 277). The Consolidated Opposition failed to address these specific arguments. (1 ER 186–221). The Trustee's Opposition was singularly focused on CFS and CAL II's positions. *Id.* Indeed, the Consolidated Opposition appears to have ignored DiNardo's Motion in its entirety. *Id.* The Trustee even claimed in the Consolidated Opposition that DiNardo failed to address the only cause of action made against him alone—money had and received. (1 ER 221). DiNardo, however, included almost five pages of argument in his Motion concerning this cause of action. (2 ER 271–275). It was CFS and CAL II that did not address this cause of action in their motion to dismiss—as the claim was not raised against them. (1 ER 157). This of course is not dispositive to the two causes of action at issue in the present appeal, but it demonstrates that the Trustee ignored DiNardo's Motion, and the arguments made therein, in her Consolidated Opposition.

As relevant here, the Trustee failed to address DiNardo's argument regarding the Fifth Cause of Action for Aiding and Abetting Breach of Fiduciary Duty in her Consolidated Opposition. In addition to the arguments relating to CFS and CAL II, DiNardo argued, *inter alia,* that the Trustee's cause of action should be dismissed against him because:

- the Trustee failed to adequately plead that DiNardo was an implied in fact partner of Girardi Keese.

- the Trustee failed to allege that DiNardo had "actual knowledge," of Girardi's breach of fiduciary duties to Girardi Keese.

- the Trustee failed to allege that DiNardo provided substantial assistance to Girardi in breaching his fiduciary duties.

- the Trustee failed to allege that DiNardo had either a conscious decision to participate in tortious activity or acted with intent of facilitating the commission of that tort.

Yet, the Trustee made no mention of any of these arguments. (1 ER 186 – 221). Underscoring this point, the Trustee entitled the portion of her argument in the Consolidated Opposition regarding the claim for Aiding and Abetting Breach of Fiduciary Duty as "**TRUSTEE'S SIXTH CLAIM FOR RELIEF AGAINST CAL II AND CFS FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY IS PROPERLY PLED.**" (emphasis in original) (1 ER 219). The Trustee provided just over one page of argument regarding this cause of action, wherein she failed to even address DiNardo or any of the arguments he forwarded in his Motion regarding the claim for Aiding and Abetting Breach of Fiduciary Duty against DiNardo.

The Consolidated Opposition also failed to address DiNardo's arguments raised against the Third Cause of Action for Declaratory Relief—Fee Sharing. In addition to the arguments contained in CFS and CAL II's motion to dismiss, DiNardo's Motion argued independently that the Trustee's claim for fee sharing as it relates to DiNardo failed because it is premised exclusively on moneys purportedly

17

received by CAL II, not DiNardo, in repayment of CAL II's loan to Girardi Keese. (3 ER 460, ¶87, ii). Again, the Trustee failed to address DiNardo's arguments. (1 ER 186–221). The Consolidated Opposition only addressed fee sharing as it relates to CFS. The Trustee's title for this section of her Consolidated Opposition was "**THE CLAIMS AGAINST CFS RESULT FROM THE PAYMENT CFS RECEIVED AS A RESULT OF THE ILLEGAL FEE SHARING-REFERRAL FEES AGREEMENTS,**" again, underscoring the fact that the Trustee limited her Consolidated Opposition to the arguments posed by CFS and CAL II, not DiNardo. (emphasis in original). (1 ER 205). The Trustee concluded this section stating, "The Trustee's claim for the return of the fees paid to CFS is properly alleged and should stand." (1 ER 206). The Consolidated Opposition made no argument with respect to DiNardo individually, instead it addresses his purported role as the "head of 'Plaintiff Services'" at CFS. (1 ER 205). As explained more fully below, this loose association does not impart individual liability upon DiNardo—a point which was made in DiNardo's Motion.

At the hearing for the motions to dismiss, the Bankruptcy Court noted that the Trustee "basically ignored" DiNardo and "lumped" him together with the other Defendants without responding to his specific arguments. (1 ER 57). When the Trustee argued that she did, in fact, address DiNardo in her Consolidated Opposition, the Bankruptcy Court stated "[w]ell, I didn't see it because you lumped… Did you

list him specifically? He has a different argument or in addition to the others." (1 ER 58). The Bankruptcy Court asked the Trustee to point to language concerning DiNardo, but ultimately explained: "[i]t's a rhetorical question. I didn't see it at all." (1 ER 59). The Court also stated, "[n]o, I understand. But where – where did you ever respond to their argument, which is, I think, a valid argument that, yeah, he's an owner. He's done these things. You never responded to—specifically—because I'm not sure you can." (1 ER 62).

Ultimately, the Trustee conceded that her Consolidated Opposition failed to respond to arguments advanced in the motions to dismiss.

> THE COURT: Well, no, their point is -- and I tend to agree with it that they made in their motion that they -- they -- you didn't even respond to a lot of their arguments.
>
> MR. GABRIEL: Your Honor, there was a couple arguments we did not respond to. And under Rule 12 we would ask that the Court use its equitable powers to allow us -- hopefully, leave to amend and we will address it at that time. It was -- we thought we covered them all in what we said and in hindsight, perhaps we were in error in the way that we did it.

(1 ER 57). Inattention is not a sufficient basis to ignore DiNardo's Motion, and it does not preserve any arguments for the present appeal.

The Trustee's appeal thus, must be dismissed before the merits of her arguments are even reached. Simply put, the Trustee did not preserve the arguments included in the present appeal. An appeal is not, by its very nature, an opportunity to raise arguments for the first time, which were available to the Trustee when

opposing DiNardo's Motion. Thus, this Court should affirm the Bankruptcy Court's decision to dismiss the Complaint with prejudice.

## IV. THE BANKRUPTCY COURT'S DISMISSAL OF THE COMPLAINT WAS PROPER BECAUSE THE TRUSTEE DID NOT ALLEGE THAT DINARDO HAS ANY INDIVIDUAL LIABILITY

Even if this Court determines that the Trustee properly preserved her arguments on appeal, this Court must affirm the holding of the Bankruptcy Court. The Trustee, at the hearing for the motions to dismiss, confirmed that the claims against DiNardo do not relate to his individual actions and admitted that the only basis for DiNardo's involvement in the lawsuit was through a theory of alter ego or agency. (1 ER 69). As the Trustee settled with CAL II and CFS, all claims against DiNardo have been extinguished. (Bankr. Dks. 384, 1673, 1737). Moreover, the Bankruptcy Court properly determined that the Trustee failed to allege any facts to hold DiNardo personally liable for any of the alleged conduct at issue.

i. *The Trustee admitted that her theory of liability against DiNardo did not stem from any individual liability.*

The Trustee explicitly stated that her theory of liability against DiNardo was based solely on a theory of alter ego or agency—not individual liability. (1 ER 69). The Trustee also conceded that she settled with the corporate defendants CAL II and CFS. (Dkt. 16, p. 2). In this regard, the entirety of this appeal must be dismissed as moot.

It is well settled that the law will not permit double recovery. *See Seymour v. Summa Vista Cinema, Inc.,* 809 F.2d 1385, 1389 (9th Cir.), *amended,* 817 F.2d 609 (9th Cir. 1987); *United Alloys, Inc. v. Baker,* 797 F. Supp. 2d 974, 1002 (C.D. Cal. 2011); *Hennessey v. ICE Floe, LLC,* 2021 WL 322685, at *1 (W.D. Wash. Feb. 1, 2021). Permitting a party to recover for the same conduct, twice, runs afoul of principles of equity. *See generally Boeing Co. v. Cascade Corp.,* 207 F.3d 1177, 1187 (9th Cir. 2000)*; United Alloys, Inc.,* 2011 WL 2749641, at *25.

At the hearing for the motions to dismiss, the Bankruptcy Court directly asked the Trustee the basis for DiNardo's liability with respect to each of the causes of action against him, stating in relevant part:

> THE COURT: Okay. And of those [causes of action] you're suggesting that the -- that -- that the basis for the -- for Mr. DiNardo's liabilities, that's acting by himself, that he's liable for those, right? Nothing to do with his corporations?

(1 ER 69). In response, the Trustee stated:

> MR. GABRIEL: *No.*

(*Id.*) (emphasis added). The Bankruptcy Court then asked the Trustee's counsel to explain:

> THE COURT: Okay. Well, tell me the connection. That's what I'm trying to get at.

(*Id.*). To which, the Trustee's counsel provided, in relevant part:

> MR. GABRIEL: *The connection is in the claims for relief, the alter ego allegations.*

(*Id.*) (emphasis added). The Court further stated:

> THE COURT: So if he's not the alter ego of those, then you don't have anything against him.

(1 ER 70).

The Trustee, given a second opportunity to explain the basis for her claim against DiNardo stated:

> MR. GABRIEL: He's also the agent of them.
>
> THE COURT: Excuse me?
>
> MR. GABRIEL: And we allege agency and they're bound by his acts and conduct.
>
> THE COURT: Because?
>
> MR. GABRIEL: Because he's an agent of those corporations. He was committing a fraud on their behalf.

*Id.* Agency does not, however, provide any basis for individual liability. Agency principles hold the principal responsible for the conduct of the agent, not the reverse. *See Engineer.AI Corp. v. Kaufman,* 2022 WL 17886022, at *4 (C.D. Cal. Dec. 2, 2022) (agents are not vicariously liable for the conduct of their principals) (internal citations omitted). Nonetheless, the Trustee made clear, her entire theory of liability against DiNardo stemmed from the conduct of CAL II and CFS.

Even ignoring the Trustee's admissions in the hearing, the plain text of the Complaint reiterates this point. The Trustee alleges that CAL II entered into a loan

22

agreement with Girardi Keese, whereby Girardi Keese repaid the loan through money obtained following settlement of its clients' cases. (3 ER 460). The Complaint explicitly states that DiNardo's conduct "at all times" was done "to protect CAL II's interests in Girardi Keese's collateral." (ER 455, ¶66). The Complaint further states that the claim for fee sharing is centered on the repayment of CAL II's loan, stating "[t]he CFS Defendants and Girardi Keese were to share in the fees recovered in cases on a 50-50 basis as the sole source of repayment" (3 ER 460, ¶87, *ii*).

The Bankruptcy Court repeatedly requested that the Trustee point to where in the Complaint the Trustee alleged that DiNardo bore any individual liability warranting his inclusion in the lawsuit. (1 ER 63). The Trustee was only able to generally point to exhibits in an attempt to bolster DiNardo's inclusion. (1 ER 63). As explained more fully below, exhibits are not a substitution for actual allegations made against a party. *See Kramer v. Allmon,* 2016 WL 4427045, at \*2 (N.D. Cal. Aug. 22, 2016); *Tull v. Higgins,* 2021 WL 6116971, at \*9 (N.D. Cal. Dec. 27, 2021) (citing to exhibits attached to the complaint is not a substitute for asserting actual allegations necessary to maintain a cause of action).

To that end, the Trustee already resolved her claims with CAL II and CFS. (Bankr. Dkt. 1673, Bankr. Dkt. 1737). The Trustee's Second Agreement with CAL II and CFS release CAL II and CFS, and their agents and representatives, from all

claims that the Trustee may have against them. *Id.* Although the Second Agreement attempts to carve out DiNardo from the release, the Second Agreement only carves out DiNardo with respect to claims made against DiNardo in his individual capacity and "not as an agent or representative of CFS or CAL II." (Bankr. Dkt. 1673, p. 31). At the Trustee's own admission, all her claims against DiNardo arise out of the conduct of CAL II and CFS through theories of alter ego or agency. There are no claims arising from DiNardo's conduct on behalf of himself as an individual. The necessary result is that when the Trustee terminated all claims against CAL II and CFS, she terminated her claims against DiNardo as well. Simply put, the Trustee cannot pursue recovery from DiNardo for the conduct of CAL II and CFS when she has already resolved her claims against them.

In conjunction with the Trustee's admissions in the hearing, her inability to point to any allegations warranting individual liability, and the plain language of the Complaint, it is clear that DiNardo's role in this lawsuit pertains only to his alleged relationship with CAL II and CFS.

ii.   *The Trustee did not plead any facts sufficient to support an alter ego theory*

The Bankruptcy Court properly determined that DiNardo had no liability for the conduct of CAL II or CFS because the Trustee failed to allege facts to maintain any veil piercing theory.

24

Federal Courts "apply the law of the forum state in determining whether a corporation is an alter ego" of an individual." *S.E.C. v. Hickey,* 322 F.3d 1123, 1128 (9th Cir.), *opinion amended on denial of reh'g sub nom. Sec. & Exch. Comm'n v. Hickey,* 335 F.3d 834 (9th Cir. 2003). As all the purported conduct arises pursuant to CAL II, and CAL II is a New York Corporation, New York veil piercing law applies. *Id.*; 3 ER 443, ¶22.

It cannot be disputed that CAL II, CFS and DiNardo are distinct legal entities. *See Port Chester Elec. Const. Co. v. Atlas*, 40 N.Y.2d 652, 656 (1976) (""[c]orporations, of course, are legal entities distinct from their managers and shareholders and have an independent legal existence. Ordinarily, their separate personalities cannot be disregarded."). "Under New York law, a party seeking to pierce the corporate veil must generally show that: '(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury.'" *EED Holdings v. Palmer Johnson Acquisition Corp.,* 228 F.R.D. 508, 512 (S.D.N.Y. 2005). The Second Circuit identified a variety of non-exclusive factors to assist in determining whether an individual exercises complete domination over a corporation. *See Shantou Real Lingerie Mfg. Co.,* 401 F. Supp. 3d at 439–40 (S.D.N.Y. 2018).

The Trustee simply alleged that "the CFS Defendants, and DiNardo, and each of them were acting as the agent, servant, employee, partner, co-conspirator, and / or joint venture of each other and that CFS, CAL II, and DiNardo were acting in concert with each other in all matters alleged." (1 ER 209). The Trustee failed to allege a single factor to support the conclusion that the corporate form of CAL II or CFS should be disregarded. The only support the Trustee provided in the Consolidated Opposition for her claim that DiNardo should be held personally responsible for CAL II and CFS's purported conduct is that:

> DiNardo is one of the founders, owners and managing members of CFS and CAL II. DiNardo's role at CFS is 'Plaintiff Support.' DiNardo is a senior officer of Cal II and a member of its board of directors.

(1 ER 210). The Trustee also pointed to Exhibit 3, wherein DiNardo advised that "we have not Agreed." *Id.* The allegation that DiNardo is a founder, owner or board member or used the term "we" when sending emails (of course suggesting that he was not acting in his individual capacity), does not impart personal liability upon him for the conduct of either CFS or CAL II.

The Bankruptcy Court agreed and concluded that DiNardo's purported wrongdoing was based solely on the alleged conduct of CAL II. It stated in relevant part:

> Well, from your standpoint you represent II. [sic] One, CAL seems to be the main one. And, as you pointed out in your papers there, the other two [Defendants] are kind of dragged along and lumped together is basically the argument, which I -- you know, I agree with there in that

26

regard.

(1 ER 21). The Bankruptcy Court continued:

> The only real argument cutting through all of this is sort of obvious is
> that the piercing the corporate veil essentially. Of course, there's only
> one corporation, one not core -- two or three the only individual
> defendant here is Mr. DiNardo -- that it is true -- and I'm having trouble
> with the evidence in regard to holding him liable for acts of anybody
> else is that he is at least one of the owners of both of them and the listing
> of the -- you know, the locations and so forth. ***And clearly, they're all
> related, but that doesn't go anywhere near, at least in your view and
> mine as well, somehow whether that -- that he's liable for their
> conduct***.

(1 ER 29) (emphasis added). The Bankruptcy Court concluded that even accepting

all the allegations as true, the Complaint only alleged that he owned and founded

CFS and CAL II, which did not even establish that DiNardo "ran the show". (1 ER

30). Thus, there was insufficient facts to articulate an alter ego theory. *Id.* As such,

all claims against DiNardo were properly dismissed.

iii.   *All claims against DiNardo fail because all of the Trustee's claims against
       CAL II were properly dismissed on the basis of res judicata*

The dismissal of all claims against DiNardo must be affirmed because all of

the Trustee's claims against CAL II were properly dismissed on the basis of, *inter

alia*, the doctrine of *res judicata*. (Dkt. 31).

The Ninth Circuit has ruled that "res judicata bars all grounds for recovery

that *could have been asserted*, whether they were or not, in a prior suit between the

same parties on the same cause of action." *Siegel v. Fed. Home Loan Mortg. Corp.*,

27

143 F.3d 525, 528–29 (9th Cir. 1998) (internal citations omitted). In *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002), the Ninth Circuit stated that *res judicata* prohibits lawsuits on "any claims that were raised *or could have been raised in a prior action*" when there is: "(1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between parties." (internal quotation marks and citations omitted).

The only defendant in the adversary proceeding that had a debtor-creditor relationship with Debtor is CAL II. (3 ER 433–478). The Trustee and CAL II entered into the First Agreement, wherein CAL II was entitled to an allowed secured claim. The Bankruptcy Court approved the First Agreement and terms therein by order entered on June 9, 2021 (Bankr. Dkt. 384). The Trustee did not preserve the right to make the claims set forth in the Complaint against CAL II and for this reason, the Complaint was properly dismissed with prejudice.

The First Agreement forestalls any claim arising out of the CAL II loan—or any conduct attributable to CAL II—because it satisfies each factor of the *res judicata* doctrine. With respect to the identify of claims, "[t]he central criterion in determining whether there is an identity of claims between the first and second adjudications is whether the two suits arise out of the same transactional nucleus of facts. *See Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 714 (9th Cir. 2001). The Complaint arises out of CAL II's business relations with Girardi Keese

28

and the repayment of the CAL II loan and thus arise out of the same transactional nucleus of facts as the First Agreement. Further, as the Trustee's claim against DiNardo only occur as a result of his alleged agency / alter ego with CAL II, it is not DiNardo's relationship at issue.

With respect to a final judgment on the merits, the Bankruptcy Court's determination that the claim of CAL II is an "allowed claim," by entering the First Settlement Order, means that the First Agreement is conclusive as to all controversies between those parties. *See Siegel v. Fed. Home Loan Mortg. Corp.*, 143 F.3d at 530 ("[I]f the court formally actually allows the claim, there can be little doubt about the ultimate res judicata effect of that allowance.").

The factor of privity of parties is also satisfied. Although DiNardo was not a party to the First Agreement, his inclusion in the adversary action is premised exclusively on CAL II and its loan to Girardi Keese. The Trustee conceded that her only theory of liability against DiNardo is grounded in an alter ego or agency theory. (1 ER 69). The Complaint explicitly states that DiNardo's conduct "at all times" was done "to protect CAL II's interests in Girardi Keese's collateral." (3 ER 455, ¶66). Even the claim for fee sharing only concerns the repayment of CAL II's loan (3 ER 460, ¶87, ii). The Trustee made this point abundantly clear in oral argument stating, "DiNardo took money from Girardi and never applied it to the loan." (1 ER 43). There is no factual allegation that DiNardo took on any of Girardi Keese's liability,

sought repayment from Girardi Keese in an individual capacity, made a claim against the Estate or otherwise acted in an individual capacity. All of the claims against DiNardo arise from CAL II and the repayment of CAL II's loan. As such, because the First Agreement precludes claims against CAL II, the Trustee cannot pursue recovery against DiNardo. To suggest otherwise would allow double recovery.

The Bankruptcy Court agreed, holding:

> I think the settlement agreement is pretty clear. I understand the various arguments, but I think that *res judicata* does apply. I'm still at a loss to find out why the other -- the Counsel Financial Services is liable. And the same for Mr. DiNardo.

(1 ER 97).

All claims against DiNardo arise from the loan agreement between CAL II and Girardi Keese, and all these claims lack merit with respect to CAL II, the Bankruptcy Court properly dismissed all causes of action against DiNardo.

iv.   *All claims against DiNardo fail because all of the Trustee's claims against CFS were properly dismissed*

If this Court determines that the Trustee sufficiently alleged an alter ego theory concerning CFS, the dismissal of all claims against DiNardo must still be affirmed.

The Trustee failed to articulate any claim against CFS. Like DiNardo, CFS did not extend any loan to Girardi Keese. As with DiNardo, the Trustee failed to

allege any conduct which would warrant CFS's inclusion in this matter. (3 ER 433–478). To the extent that any claims against DiNardo arise from claims against CFS, these claims all lacked merit and were properly dismissed.

## V.   TRUSTEE DID NOT MEET THE PLEADING STANDARDS OF FED. R. CIV. P. 8 AND 9

### i.   *The Trustee's allegations against DiNardo fail to satisfy Fed. R. Civ. P. 8(a)*

Fed. R. Civ. P. 8(a) requires a plaintiff to allege facts sufficient to "give the defendant fair notice of what plaintiff's claim is and the grounds upon which it rests." *Swiekiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). The pleading standard of Fed. R. Civ. P. 8 "does not require detailed factual allegations," the pleading standard does require "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Deerpoint Grp., Inc. v. Acqua Concepts, Inc.*, 2014 WL 7178210, at *3 (E.D. Cal. Dec. 16, 2014). Shotgun pleadings fall well short of this standard and are routinely dismissed in the Ninth Circuit. *See Ewing v. Encor Solar, LLC,* 2019 WL 277386, at *6 (S.D. Cal. Jan. 22, 2019) (dismissing the complaint where the defendants' purported conduct was not differentiated from the other defendants); *Destfino v. Reiswig,* 630 F.3d 952, 958 (9th Cir. 2011) (dismissing the complaint that did not clearly articulate how each defendant violated the plaintiff's rights, noting "everyone did everything" allegations were insufficient).

The principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial. *See, e.g., Geisler v. Petrocelli*, 616 F.2d 636, 640 (2d Cir. 1980); *2A Moore's Federal Practice* para. 8.13, at 8-61 (2d ed. 1987). The statement should be short because "unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1281, at 365 (1969).

The Complaint is a quintessential shotgun pleading, which conflates DiNardo, CFS and CAL II into one group called "CFS Defendants,"—including the only two relevant causes of action at issue here. When a complaint uses "either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular [unlawful] acts they are alleged to have committed." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (citing *Atuahene v. City of Hartford,* 10 F. App'x at 34 (2d Cir. 2001)); *see also Appalachian Enters., Inc. v. ePayment Solutions, Ltd.,* 2004 WL 2813121, at *7 (S.D.N.Y. Dec. 8, 2004) ("plaintiff fails to satisfy [R]ule 8, where the complaint 'lump[s] all the defendants together and fail[s] to distinguish their conduct' because such allegations fail to give adequate notice to the [] defendants as to what they did

wrong"); *see also In re Urcarco Securities Litigation*, 148 F.R.D. 561, 569 (N.D.Tex.1993), aff'd, 27 F.3d 1097 (5th Cir.1994).

The Bankruptcy Court noted the insufficiency of the Trustee's "lumping" of the defendants together, stating:

> And I can see my concern, as you quite accurately pointed out, is you've got three defendants lumped together. Quite frankly, my view is the reason that's usually done in cases it's hard to distinguish between the two and that was fairly done in this particular case.

(1 ER 26). The Bankruptcy Court stated that it couldn't tell "who did what" because the Trustee "lumped" the defendants together. (1 ER 32). In response, the Trustee explained that conflating the defendants was intentional because "simply we could not tell, based on the information we had, whether they were separate parties or not." (1 ER 34). This is a tacit admission that the Complaint did not, and could not, satisfy the requirements of Fed. R. Civ. P. 8(a), and as set forth below, the Trustee certainly could not meet the heightened pleadings standard set forth by Fed. R. Civ. P. 9.

The Trustee further argued that, despite the aggregation of the defendants, the Court should nonetheless be able to discern from the exhibits attached to the Complaint the roles of each defendant. (1 ER 34). In other words, although the Trustee couldn't figure out each parties' respective role, DiNardo and the Court should be able to figure it out based on documents attached to the Complaint. There is no decisional authority to support the contention that exhibits attached to a Complaint circumvent Plaintiff's Fed. R. Civ. P. 8 requirements. *See Kramer,* 2016

33

WL 4427045, at *2 ("Plaintiff is cautioned that exhibits are not a substitute for meeting the pleading requirements of Rule 8. The Court is not required to—and will not—sift through exhibits trying to piece together Plaintiff's possible claims"); *Tull,* 2021 WL 6116971, at *9 (citing to exhibits attached to the complaint is not a substitute for asserting actual allegations necessary to maintain a cause of action); *see generally In re Jud. Misconduct,* 632 F.3d 1287, 1288 (9th Cir. 2011). The Bankruptcy Court is not required to extrapolate facts from exhibits in order to assist the Trustee in conforming her pleadings to the Federal Rules. *See generally Foley v. Wells Fargo Bank, N.A.,* 772 F.3d 63, 79 (1st Cir. 2014) (on a motion to dismiss, Courts are not "pigs[ ] hunting for truffles' in the record") (internal citations omitted).

The Bankruptcy Court's request for the Trustee to point to the actual language in the Complaint that sets forth the basis for DiNardo's personal liability was not, as the Trustee alleges, evidence that the Court refused to consider the attached exhibits. (1 ER 54, 1 ER 55, 1 ER 58–59). Instead, the Bankruptcy Court was seeking actual allegations that complied with the Fed. R. Civ. P. 8 requirements and asserted facts sufficient to plead that DiNardo had individual liability.

Even if the Bankruptcy Court was willing to craft the allegations in the Complaint for the Trustee based on the attached exhibits, the attached exhibits would have offered little insight. The cited exhibits are not utilized in the Trustee's Causes

of Action for Declaratory Judgment – Fee Shifting (Third Cause of Action) or Aiding and Abetting Breach of Fiduciary Duty (Fifth Cause of Action) to distinguish the specific conduct of each defendant. Instead, the exhibits are merely used as support for the claims lodged against the collective "CFS Defendants" group. (3 ER 433–478). The Trustee only references an exhibit in cause of action number 5, (Aiding and Abetting Breach of Fiduciary Duty). (3 ER 471, ¶ 119). Therein the use of the exhibit is used only to support the conclusion that "CFS Defendants had actual and constructive knowledge of Thomas's conduct as alleged herein in that the CFS Defendants…" *Id.* The only exhibit cited with respect to DiNardo's alleged participation in fee sharing is a list of cases. (3 ER 496–497). This document does nothing to change the fact that the Trustee's only allegations with respect to fee sharing relate to the collective CFS Defendants' repayment of the CAL II loan, not DiNardo in his individual capacity. (3 ER 460, ¶87, *ii*). To suggest that the use of exhibits throughout the Complaint puts DiNardo on notice of his respective role in the litigation—when the Trustee has failed to articulate this distinction in the Complaint, in the Consolidated Opposition or even at oral argument—fails.

As the Trustee failed to plead any cause of action against DiNardo in accordance with Fed. R. Civ. P. 8, these claims were properly dismissed.

ii.  *The Trustee's allegations against DiNardo fail to Satisfy Fed. R. Civ. P. 9(b)*

Fed. R. Civ. P. 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The entirety of the Trustee's allegations against the "CFS Defendants" are grounded in fraud. Specifically, the Trustee alleges that DiNardo (by virtue of CFS and CAL II) participated in the theft or misdirection of certain Girardi Keese client funds. (3 ER 433–478). Yet, the Complaint fails to articulate the "who, what, when, where, and how" of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

The Trustee's claims are based on conclusory statements that do not speak to the elements necessary for each claim. The term "CFS Defendants" appears 122 times in the Complaint, without itemization of which of the "CFS Defendants" committed any particular act of alleged wrongdoing or omission. The Trustee's allegations as to DiNardo only relate to his purported role as founder or owner of both CFS and CAL II—a point the Trustee fully acknowledges. (1 ER 69). Thus, the Complaint fails to state with specificity any facts upon which DiNardo is personally liable for any of the conduct alleged in the Complaint.

Further, while the Trustee's appeal includes a section purportedly addressing the Complaint's compliance with Fed. R. Civ. P. 8(a) and 9(b), the Trustee fails to address these pleading requirements. The Trustee merely recites the elements of aiding and abetting fraud and fee sharing. Whether the Trustee adequately states the

elements of these causes of action is a separate analysis and does not resolve the pleading deficiencies pursuant to Fed. R. Civ. P. 8(a) and 9(b).

As such, the Complaint failed to comply with Fed. R. Civ. P. 9(b) and were properly dismissed.

## VI. THE TRUSTEE'S THIRD CAUSE OF ACTION FOR DECLARATORY RELIEF- FEE SHARING WAS PROPERLY DISMISSED

### i. The Trustee is not entitled to a turnover proceeding

The Trustee asserts in her appeal that her cause of action for declaratory relief, return of fees paid and an accounting is a factually cognizable claim. However, the Trustee abandoned this claim with respect to DiNardo. Additionally, the Trustee is not entitled to a turnover proceeding.

The Consolidated Opposition failed to address the Trustee's entitlement to a turnover proceeding, and merely argued that she seeks an accounting as a remedy. Thus, the Trustee abandoned the claim for entitlement to a turnover proceeding pursuant to Section 542(a) and it was properly dismissed, without the opportunity for appeal. *See B&L Prods., Inc.*, 2022 WL 3567064, at *6 (S.D. Cal. Aug. 18, 2022); *Silva*, 2011 WL 7096576, at *3 (C.D. Cal. Oct. 6, 2011).

Even if the Trustee had not abandoned her claim for a turnover proceeding, the Trustee is not entitled to same. Actions that are "not seeking to obtain property of the debtor but were instead seeking to obtain property owed to the debtor, but

belonging to a third party" are "not turnover proceedings." *John Hancock Mut. Life Ins. Co. v. Watson*, 917 F.2d 1162, 1165 (9th Cir. 1990). In the Ninth Circuit, "turnover proceedings involve return of undisputed funds." *MCI Telecomms. Corp. v. Gurga*, 176 B.R. 196, 199 (B.A.P. 9th Cir. 1994). "A turnover proceeding is 'not intended as a remedy to determine the disputed rights of parties to property; rather it is intended as the remedy to obtain what is acknowledged to be property of the bankruptcy estate.'" *Diamond v. Friedman*, 466 B.R. 1, 19 (Bankr. C.D. Cal. 2012) (citations omitted). A "[contract] claim cannot be characterized as a turnover because the funds are disputed." *Daewoo Motor Am., Inc. v. Gulf Ins. Co.,* 302 B.R. 308, 313 (C.D. Cal. 2003). Thus, the decisional authority in the Ninth Circuit requires that the Estate's ownership of the property be undisputed in order to pursue turnover under Section 542(a).

The Trustee's claim for fee sharing as it relates to DiNardo is premised on moneys purportedly received in repayment of CAL II's loan to Girardi Keese. The Trustee asserted in the Complaint that "the CFS Defendants and Girardi Keese were to share in the fees recovered in the cases on a 50-50 basis as the sole source of repayment [of the CAL II loan]." (3 ER 460, ¶87, ii). The Trustee further clarified in oral argument, "[t]here was a sharing of fees. Separate and apart from this deal, CAL II, DiNardo took money from Girardi and never applied it to the loan." (1 ER

43). As alleged, and as argued by the Trustee (1 ER 69), DiNardo is not responsible, in his individual capacity, for CAL II or the Debtor's repayment of the loan.

Moreover, the characterization of Girardi Keese's relationship with DiNardo and CAL II as "fee sharing" and the alleged amount owed are both subject to dispute and are not funds "acknowledged" to be owed to the Estate. The legal fees paid were to be used to pay down the CAL II loan. (3 ER 439, ¶9, 3 ER 460, ¶87, *ii*). If the moneys at issue were intended for repayment of the CAL II loan, the Estate's entitlement to those fees are inherently contested. The Trustee is attempting to use the turnover proceeding under Section 542(a) as a way to force DiNardo to turnover funds, purportedly paid to CAL II, because the Trustee disputes the arrangement Girardi Keese entered into with CAL II. Yet, CAL II already settled with the Trustee—extinguishing any claim for recovery against DiNardo. (Bankr. Dkt. 1673, Bankr. Dkt. 1737).

As the funds in question are not acknowledged to be property of the Estate, the Trustee's claim for turnover is without merit.

ii.   *The Trustee is not entitled to an accounting*

The Consolidated Opposition failed to address the Trustee's entitlement to an accounting with respect to DiNardo. Thus, the claim was properly dismissed, without the opportunity for appeal. *See B&L Prods., Inc.*, 2022 WL 3567064, at *6; *Silva*, 2011 WL 7096576, at *3.

Even if the Trustee did not abandon her claim for an accounting, she is not entitled to same. To sufficiently claim entitlement to an account you must establish two elements: (1) that a relationship exists between the plaintiff and defendant that requires an accounting[,] and (2) that some balance is due the plaintiff that can only be ascertained by an accounting." *Sass v. Cohen*, 10 Cal. 5th 861, 869 (2020).An action for an accounting may be brought "(1) where a fiduciary relationship exists between the parties, or (2) where, even though no fiduciary relationship exists, the accounts are so complicated that an ordinary legal action demanding a fixed sum is impracticable." *Kensington Apartment Props., LLC v. Loanvest IX, L.P.*, 2019 WL 3933713, at *4 (N.D. Cal. Aug. 19, 2019). In *John Hancock Mut. Life Ins. Co. v. Watson*, 917 F.2d 1162, 1165 (9th Cir. 1990), the Ninth Circuit noted that actions attempting to obtain property owed to the debtor but belonging to a third party "were hardly turnover proceedings."

The Trustee failed to establish that there was any fiduciary relationship between DiNardo and Girardi Keese. The Trustee apparently acknowledged this point when she decided to exclude her breach of fiduciary claim against DiNardo in the present appeal. By the Trustee's admission, DiNardo "at all times" sought to benefit CAL II, not Girardi Keese. (3 ER 454, ¶60). Thus, there was no fiduciary relationship between DiNardo and Girardi Keese. There is no allegation that there were any "accounts" between DiNardo and Girardi Keese. The Trustee alleges that

"CFS Defendants" received repayment of CAL II's loans via a 50-50 split of the attorneys' fees. (3 ER 460, ¶87, *ii*). DiNardo did not make any loans to Girardi Keese and there is no allegation to suggest that DiNardo would have, or did have, any entitlement to repayment of loans extended by CAL II.

The Trustee failed to allege that the amount allegedly owed the Estate, if any, can only be ascertained through an accounting. The Trustee failed to address this in her Consolidated Opposition or in the present appeal. The Trustee alleges that the alleged amount of the fees paid to the "CFS Defendants" will be "proved at the time of trial of this matter." (3 ER 464, ¶95, *i*). As the Trustee's own allegations reflect that the alleged amount due can be made certain by calculation, an accounting is inherently improper. *See Yellowcake, Inc. v. Dashgo, Inc., et al.*, 2022 WL 172934, at *9 (E.D. Cal. Jan. 19, 2022) ("if the damages 'will be proven at trial,' then the balance due can be made a sum certain through calculation," and "an action for an accounting is improper.") (internal citations omitted). Accordingly, because "discovery in this action likely would enable [the Trustee] to calculate damages, no accounting is necessary" and she has an adequate "remedy at law." *See TopDevz, LLC v. LinkedIn Corp.*, 2021 WL 3373914, at *9 (N.D. Cal. Aug. 3, 2021).

The Trustee's request for an accounting was properly dismissed and the decision of the Bankruptcy Court must be affirmed.

## VII.  THE TRUSTEE'S FIFTH CAUSE OF ACTION FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY WAS PROPERLY DISMISSED

The Trustee failed to address DiNardo's argument regarding her Fifth Cause of Action for aiding and abetting fiduciary duty in her Consolidated Opposition. As such, the Trustee's claim for aiding and abetting breach of fiduciary duty against DiNardo, was properly dismissed, without an opportunity for appeal. *See B&L Prods., Inc.*, 2022 WL 3567064, at *6; *Silva*, 2011 WL 7096576, at *3. Despite the Trustee's failure to oppose DiNardo's Motion, the Trustee's claim was properly dismissed.

To state a claim for aiding and abetting a breach of fiduciary duty, "the plaintiff must allege: "(1) a third party's breach of fiduciary duties owed to plaintiff; (2) defendant's actual knowledge of that breach of fiduciary duties; (3) substantial assistance or encouragement by defendant to the third party's breach; and (4) defendant's conduct was a substantial factor in causing harm to plaintiff." *Wescott v. Block*, 2022 WL 1136728, at *8 (N.D. Cal. Apr. 18, 2022), *report and recommendation adopted,* 2022 WL 2114553 (N.D. Cal. June 13, 2022). Importantly, "knowledge alone, even specific knowledge, is not enough to state a claim for aiding and abetting" *George v. eBay, Inc.,* 71 Cal. App. 5th 620, 641 (2021), one must establish that the "defendant reach a conscious decision to participate in tortious activity for the purpose of assisting another in performing a

wrongful act...." *Am. Master Lease LLC v. Idanta Partners, Ltd.,* 225 Cal. App. 4th 1451, 1475–76 (2014), *as modified* (May 27, 2014). Importantly, the Trustee's appeal only addresses one element of the aiding and abetting claim—actual knowledge. The Trustee's arguments pertaining to actual knowledge remain patently insufficient to overturn the Bankruptcy Court's dismissal of this claim.

Here, the Trustee alleges that the CFS Defendants:

> knew or should have known that Thomas was inappropriately diverting money from Girardi Keese's Client Trust Account; the CFS Defendants continued to do business with Girardi Keese, providing the financial support necessary for Girardi Keese to continue in business and to continue its fee sharing program and, in so doing, aided and abetted Thomas's fraud, breach of fiduciary, and theft of trust funds.

(3 ER 471, ¶120).

First, the Trustee's claim is grounded in fraud. Thus, this claim is governed by Fed. R. Civ. P. 9(b). Because the Trustee aggregates DiNardo, CFS and CAL II together, this claim does not meet the heightened Fed. R. Civ. P. 9(b) standard and must be dismissed.

Second, the Trustee failed to sufficiently allege that DiNardo had "actual knowledge" of Girardi's breach of his fiduciary duties to Girardi Keese's clients. The Complaint states that the "CFS Defendants" "knew or should have known" or had "actual or constructive knowledge" of Girardi's breach of his fiduciary duties, is insufficient. (3 ER 469–470, ¶¶115-117; 3 ER 471–472, ¶¶119-120). The Trustee incorrectly asserts that the Complaint alleges actual knowledge. (Dkt. 16, p. 40). The

Complaint never states that DiNardo has actual knowledge. (3 ER 433–478). Instead, the term "actual knowledge" is used three times in the Complaint when referring to either the "CFS Defendants" or CFS, however, in each instance the Trustee asserts this claim "upon information and belief." (3 ER 440–441, ¶13, 3 ER 460, ¶87). Not only do these allegations fail to name DiNardo in his individual capacity, it is not enough to allege, in conclusory fashion, that the "CFS Defendants" or CFS had actual knowledge. *See Namer v. Bank of Am., N.A.*, 2017 WL 1180193, at *4-5 (S.D. Cal. Mar. 30, 2017) (finding that the plaintiff's "conclusory allegations" "fail[ed] to plausibly establish that [the defendant] had actual knowledge of the alleged wrongful conduct"). The Trustee's use of the phrase "knew or should have known," does not revive this claim either. *See Hammett v. Sherman*, 2020 WL 1332591, at *9, 14 (S.D. Cal. Mar. 23, 2020) (dismissing an aiding and abetting breach of fiduciary duty claim where the plaintiff's allegations "amount to the type of 'knew or should have known' allegations that federal courts have found insufficient to plead actual knowledge.").

The appeal does not point to any portion of the Complaint that establishes that DiNardo had actual knowledge of Girardi Keese's' breach of its fiduciary duty to its clients. The Trustee instead suggests that DiNardo knew because he was involved in illegal fee sharing with Girardi Keese. This does not evidence actual knowledge that Girardi Keese failed to notify its clients of fee sharing arrangements or otherwise was failing to provide its clients with settlement funds. The Trustee also failed to

allege that DiNardo had actual knowledge that the alleged shared fees were provided out of Girardi Keese's clients' accounts. Accordingly, the Trustee's reliance on fee sharing to bolster this claim is unavailing. Ultimately, the Trustee's failure to allege actual knowledge is fatal to this claim. *See Neilson v. Union Bank of Cal., N.A.*, 2003 WL 27374137, at *10 (C.D. Cal. Feb. 20, 2003).

Third, the Trustee failed to allege that DiNardo provided substantial assistance to Girardi in breaching his fiduciary duties. The Complaint sets forth that "CFS Defendants" provided substantial assistance by providing capital to Girardi Keese. (3 ER 470, ¶117). Importantly, the Complaint only alleges that CAL II extended capital to Girardi Keese, not DiNardo. Any argument that DiNardo's purported assistance in finding additional funding and negotiating on behalf of Girardi Keese is tantamount to substantial assistance, fails. Absent actual knowledge, "[o]rdinary business transactions" cannot satisfy the substantial assistance element. See *Casey v. U.S. Bank Nat. Assn.,* 127 Cal. App. 4th 1138, 1145 (2005) ("knowledge is the crucial element" when determining substantial assistance). The Trustee's appeal is silent with respect to this element.

Fourth, "causation is an essential element of an aiding and abetting claim, i.e., plaintiff must show that the aider and abettor provided assistance that was a substantial factor in causing the harm suffered." *Neilson, N.A.,* 290 F. Supp. 2d at 1135. The Trustee failed to allege how the "CFS Defendants'" alleged conduct of

lending money to Girardi Keese aided and abetted Girardi Keese in stealing from its clients. DiNardo did not provide any capital to Girardi Keese and is not personally liable for the lending practices of CAL II. The Trustee fails to allege how DiNardo's alleged conduct of assisting in finding additional funding or negotiating with Girardi Keese substantially assisted the law firm in stealing from its clients. There is nothing to suggest that "but for" DiNardo's conduct, Girardi Keese or Girardi would not have been able to breach its fiduciary duty to its clients. the Trustee's appeal is silent with respect to this element.

Finally, the Trustee failed to allege that DiNardo had either (1) a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act; or (2) acted with the intent of facilitating the commission of that tort. *See George,* 71 Cal. App. 5th 620, 642; *see also Siegal v. Gamble*, 2015 WL 4734741, at *7 (N.D. Cal. Aug. 10, 2015). The Trustee's appeal is silent with respect to this element.

The Trustee abandoned her claim for aiding and abetting breach of fiduciary duty as it pertains to DiNardo, and she has no basis to bring the present appeal. As such, the Bankruptcy Court's decision must be affirmed.

## VIII.  THE TRUSTEE'S ARGUMENTS FAIL TO SUPPORT REVERSAL OF THE BANKRUPTCY COURT'S DECISION

Understanding that she failed to preserve any arguments for appeal, the Trustee advances several arguments that have no merit, mischaracterize the record

and are clear red herrings. None of the Trustee's arguments warrant the reversal of the Bankruptcy Court's decision.

First, as noted above, the Trustee's claim that the Bankruptcy Court refused to consider the exhibits attached to her Complaint is a clear mischaracterization of the Bankruptcy Court's line of questioning at the hearing and the pleadings standards. A brief review of the hearing transcript reflects that the Court explained that the Trustee was relying upon the attached exhibits, when the Complaint itself was silent as to the facts supporting the claims, or any of the elements for same. It stated, "You attached documents to establish what's in the complaint, not vice versa." (1 ER55). This point is well within the established decisional authority in this Circuit and does not reflect reversible error. *See Kramer,* 2016 WL 4427045, at *2 (exhibits do not satisfy pleading requirements or put defendants on notice); *Tull,* 2021 WL 6116971, at *9 (same); *Klepac v. CTX Mortg. Co., LLC,* 2012 WL 662456, at *6 (E.D. Cal. Feb. 28, 2012) ("[p]laintiffs' vague allegation that "exhibits attached to this Complaint, show the false and fraudulent documents" does not meet the requisite specificity required under Rule 9(b)"); *Belton v. Olympia Police Dep't,* 2021 WL 1312981, at *2 (W.D. Wash. Apr. 8, 2021)(documents attached to the complaint are evidentiary exhibits, not a substitute for allegations in the complaint); *Pond v. Doe,* 2021 WL 2138446, at *1 (W.D. Wash. May 26, 2021)(same). The exhibits attached to the Complaint did not, and could not, overcome the insufficiency

47

of the Trustee's allegations against DiNardo. Accordingly, the Bankruptcy Court did not err when it concluded that the Complaint failed to state a claim against DiNardo.

In that same vein, the Trustee's claim that the Bankruptcy Court refused to view facts in a light most favorable to the Trustee fails. The Trustee asserts that the Bankruptcy Court erred when it concluded that it did not see that DiNardo did anything wrong. (Dkt. 16, p. 31). The Trustee ignores that the Court came to this conclusion based on the facts alleged in the Complaint. The Bankruptcy Court provided ample explanation for the deficiencies it found in the Complaint with respect to DiNardo, not the least of which that all allegations against DiNardo were explicitly tied to DiNardo's intention to protect CAL II's loan, a point that the Trustee conceded both in the plain language of the Complaint and at the hearing. (1 ER 69; 3 ER 455, ¶66). A review of the hearing transcript underscores that the Bankruptcy Court did not fail to view the allegations in a light most favorable to the Trustee, but instead determined that the allegations themselves were insufficient. (1 ER 16–130).

Finally, the Trustee's position that the Bankruptcy Court's decision is somehow insufficient because it did not render its decision to a written opinion misses the mark. (Dkt. 16, p. 50). The Bankruptcy Court verbally provided a lengthy explanation for its decision at the hearing, which was transcribed by a court reporter. As such, the Trustee is not left to "speculate" about the basis for its decision. The

Trustee's decisional authority, *United States v. Webb,* 655 F.2d 977 (9th Cir. 1981), does not support the conclusion that failure to render a written memorandum in support of an order is an abuse of discretion. Instead, it relates that the absence of a statement made it impossible to determine whether there was abuse of discretion. The Ninth Circuit did not require that the "statement" be in writing. It is unquestionable that the Bankruptcy Court provided a fulsome explanation for its dismissal of the Complaint.

In short, the Trustee failed to oppose DiNardo's Motion (1 ER 186–221), admitted that it only maintained causes of action against DiNardo on the basis of an alter ego theory (1 ER 69), and it settled outstanding issues with CFS and CAL II, twice. (Bankr. Dkts. 384, 1673, 1737). Given that the Trustee has no legal basis to commence this appeal, the Trustee attempted to distract the Court with a multitude of arguments, none of which have any merit. The Trustee failed to provide any reasonable basis to reverse the Bankruptcy Court's decision to dismiss the Complaint against DiNardo.

## IX.   THE BANKRUPTCY COURT DID NOT ERR WHEN IT DENIED TRUSTEE'S REQUEST TO AMEND THE COMPLAINT

As noted above, District Courts review a bankruptcy court's denial of leave to amend for abuse of discretion. *In re Perry,* 662 F. App'x 532, 533–34 (9th Cir. 2016) *citing Ditto v. McCurdy*, 510 F.3d 1070, 1079 (9th Cir. 2007). "A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the

correct legal standard, or makes factual findings that are illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *In re Censo, LLC,* 638 B.R. 416, 422 (B.A.P. 9th Cir. 2022), *aff'd,* 2023 WL 6866294 (9th Cir. Oct. 18, 2023). As detailed below, the Bankruptcy Court did not abuse its discretion when it determined that amendment would be futile.

Generally, leave to amend is to be freely given. *See* Civil Rule 15; *Tracht Gut, LLC v. L.A. Cnty. Treasurer & Tax Collector (In re Tracht Gut, LLC)*, 503 B.R. 804, 814 (9th Cir. BAP 2014), *aff'd*, 836 F.3d 1146 (9th Cir. 2016). "At the same time, if the bankruptcy court determines that amendment would be futile, it ***must dismiss*** the complaint with prejudice." *In re Censo, LLC,* 638 B.R. at 426 (emphasis added).

The Bankruptcy Court denied the Trustee's request to amend because it determined that any amendment would be futile. The Bankruptcy Court did not take the decision to deny the Trustee's request for amendment lightly, and it provided a lengthy explanation for its rationale at the hearing.

The Bankruptcy Court concluded that the First Agreement between CAL II and the Trustee barred the Complaint, stating:

> Nevertheless, as far as this particular case, that deal was pretty explicit and I -- and I believe that the *res judicata* would, by and large, take care of all these claims.

(1 ER 100). The Bankruptcy Court noted that additional allegations "doesn't change the deal was entered into and that-- so I think *res judicata* takes care of virtually

everything here." (1 ER 101). As all claims against DiNardo arise from the loan agreement between CAL II and Girardi Keese, and all these claims lack merit with respect to CAL II because CAL II entered into the First Agreement with the Trustee, there can be no claims made against DiNardo.

The Bankruptcy Court's decision did not rest with the existence of the First Agreement alone. The Bankruptcy Court concluded that the Trustee failed to establish "any of the elements of the Complaint." (1 ER 99). The Bankruptcy Court explained that the there were no amendments the Trustee could make to cure the Complaint's deficiencies.

> I'm not going to allow any further amendments. The -- I know what went on here. I've read the papers in this case. There is no way in the world that you're ever going to be -- prove that there was a – for instance, a -- they were partners. It just isn't there. I understand the law in that area is all -- as the three of you understand the law in this area. It just isn't there.

(1 ER 97). The Trustee did not argue in her Consolidated Opposition or in this appeal that it did, in fact, allege all the elements for the two causes of action at issue in this appeal. For example, the Trustee only provided argument regarding one element of her aiding and abetting breach of fiduciary duty claim. (Dkt. 16). The Bankruptcy Court rightly concluded that the facts alleged in the Complaint reflect parties, operating in the normal course of business, trying to protect themselves from loss without having done "anything wrong." (1 ER 98).

51

The Bankruptcy Court's decision to deny leave was proper in light of the fact that the Trustee simply ignored the arguments in DiNardo's Motion. The Trustee, failing to oppose DiNardo's Motion, abandoned the claims and arguments therein. After failing to oppose DiNardo's Motion, the Trustee must not be permitted to revive her claims against DiNardo. *See generally, Ascon Properties, Inc. v. Mobil Oil Co.,* 866 F.2d 1149, 1161 (9th Cir. 1989) ("'At some point,' however, 'a party may not respond to an adverse ruling by claiming that another theory not previously advanced provides a possible [ground] for relief and should be considered.'").

It is abundantly clear that the Trustee's appeal must be denied in its entirety. The Bankruptcy Court's decision to dismiss the Complaint with prejudice was clear, applied the correct legal standards, and was tethered to the facts and circumstances before it. Thus, the Bankruptcy Court's decision must be affirmed.

## CONCLUSION

The Court should affirm the Bankruptcy Court's decision to dismiss the Complaint with prejudice.

Dated:        January 12, 2024

**LIPPES MATHIAS LLP**


s/ Richard M. Scherer, Jr.
Richard M. Scherer, Jr., Esq. (*pro hac vice*)
*Attorneys for Defendant-Appellee,*
*Joseph D. DiNardo*

<u>**CERTIFICATE OF COMPLIANCE**</u>

Pursuant to Fed. R. App. Proc. 32(a)(7)(B) and Fed. R. Bankr. Proc. 8015(a)(7)(B)(i), this brief complies with the type-volume limitation set forth therein because it contains 12,924 words counted by Microsoft 365, which was used to produce this brief excluding the items exempted by Fed. R. App. Proc. 32(f).

This brief complies with the typeface requirements of Fed. R. App. Proc. 32(a)(5) and the typestyle requirements of because Fed. R. App. Proc. 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft 365 using Times New Roman 14-point font.

Dated:          January 12, 2024

**LIPPES MATHIAS LLP**

<u>s/ Richard M. Scherer, Jr.</u>
Richard M. Scherer, Jr., Esq. (*pro hac vice*)
*Attorneys for Defendant-Appellee,*
*Joseph D. DiNardo*

## <u>PROOF OF SERVICE</u>

STATE OF NEW YORK
COUNTY OF ERIE

At the time of service, I was over 18 years of age and **not a party to this action**. I am a Partner with the law firm Lippes Mathias LLP with a business address of 50 Fountain Plaza, Suite 1700, Buffalo, New York 14202.

On January 12, 2024, I served true copies of the following document described as:

### **DEFENDANT-APPELLEE'S RESPONDING BRIEF**

on the interested parties in this action as follows:

Larry W. Gabriel, Esq. – <u>lgabrielaw@outlook.com</u>

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on January 12, 2024 in Buffalo, New York.


s/ Richard M. Scherer, Jr.
Richard M. Scherer, Jr., Esq. (*pro hac vice*)